UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| J. LEONARD SPODEK, et al., § | |
|     Plaintiffs, § | |
| v. § | No. 3:07-CV-1888-BF |
| UNITED STATES POSTAL SERVICE, § | |
|     Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court upon remand by the United States Court of Appeals, Fifth Circuit. *Spodek v. U.S. Postal Serv.*, 551 Fed. App'x 781, 789 (2014); J. [ECF No. 170]. The Court held a hearing on this matter on January 17, 2017. *See* Docket [ECF No. 195]. This matter has been fully briefed and is ripe for determination.

### I. Background[1]

The determination on remand for this Court is to consider "the existence and scope of an implied warranty as set forth in *Poorvu*." *Spodek*, 551 Fed. App'x at 789; *Poorvu v. U.S.*, 190 Ct.Cl. 640 (1970). In the Court's final judgment it ordered, J. Leonard Spodek and Rosalind Spodek ("Plaintiffs"), take nothing by way of their claims against the United States Postal Service ("USPS"). Am. J. 1 [ECF No. 163]. The Court awarded the USPS $173,960.31, plus post-judgment interest at a rate of 0.14% per annum. *Id*. [ECF No. 163]. The Fifth Circuit held this Court committed error by holding only the terms of the lease, not the plans and specifications for the building, controlled the duties of the parties, stating:

> This error was significant because it caused the district court to disregard the government's construction plans and specifications and the related stipulations and evidence regarding the asbestos containing materials which were required by those plans and specifications. In short, the district court's finding that the plans

---

[1] The Court adopts the Statement of Stipulated Facts from this Court's Amended Memorandum Opinion and Order dated August 9, 2012, which the parties do not dispute and the Fifth Circuit relied upon in its opinion. *See* Am. Mem. Op. & Order 1-9 ¶¶ 2-41 [ECF No. 162].

1

and specifications were not relevant was central to its conclusions regarding liability.

*Spodek*, 551 Fed. App'x at 789. Accordingly, the Court will now look towards the lease and the plans and specifications for the building as one agreement. *Id*.

## II. Implied Warranty

As the parties stipulated, "the building was built according to plans and specifications required by and approved by the Postal Service, including the use of asbestos-containing materials." *Id*. at 787. "Based on *United States v. Spearin*, 248 U.S. 132 (1918), and its progeny, the *Poorvu* court found that by providing plans and specifications the government had created an implied warranty that a building 'constructed in accordance with [those plans and specifications] . . . would be fit for its intended purpose.'" *Id*. at 787-88 (quoting *Poorvu*, 190 Ct.Cl. at 647-52).[2] "*Spearin* stands for the proposition that when the government includes detailed specifications in a contract, it impliedly warrants that (i) if the contractor follows those specifications, the resultant product will not be defective or unsafe, and (ii) if the resultant product proves defective or unsafe, the contractor will not be liable for the consequences." *Hercules Inc. v. U.S.*, 24 F.3d 188, 197 (Fed. Cir. 1994) (citing *Spearin*, 248 U.S. at 136-37). Further, "[t]he *Poorvu* court also *rejected* the contention that the lessor's obligation to 'keep the demised premises . . . in good repair and tenantable condition . . . except in case of damage arising from the act or the negligence of the Government's agents or employees,' *cut off* the government's liability[.]" *Spodek*, 551 Fed. App'x at 788 (quoting *Poorvu*, 190 Ct.Cl. at 652) (emphasis added). "As with any contract-based claim, however, to recover for a breach of warranty, a plaintiff must allege and prove (1) that a valid warranty existed, (2) the warranty was breached, and (3) plaintiff's

---

[2] *See also Spodek v. United States*, 73 Fed.Cl. 1, 11 (2006) (hereafter "*Spodek I*") (summarizing the factual background and holding of *Poorvu*).

damages were caused by the breach." *Hercules Inc*, 24 F.3d at 197 (citing *San Carlos Irrig. and Drainage Dist. v. U.S.*, 877 F.2d 957, 959 (Fed. Cir. 1989)).[3]

Plaintiffs argue that in applying *Poorvu* to this case the USPS created an implied warranty because the lease agreement itself included the building plans and specifications. Pls.' Br. 5 [ECF No. 189]. Plaintiffs argue "an implied warranty was created by the USPS warranting that the asbestos-containing building was fit for its intended purpose." *Id*. [ECF No. 189]. Plaintiffs contend by terminating the lease early because of the asbestos-containing material ("ACM") the USPS's breach of the lease was an unreasonable breach and the USPS is liable for any damages caused by its presence on the property. *Id*. [ECF No. 189]. The USPS argues, "regardless of whether a warranty was created . . . no implied warranty inured to the benefit of the Plaintiffs . . . because [it] had expired before the events that gave rise to this litigation . . . ." Def.'s Br. 1 [ECF No. 190]. The USPS contends that Plaintiffs cannot recover for breach of implied warranty because a valid warranty no longer exists. *Id*. at 7 [ECF No. 190]. The USPS argues that in deciding the duration of the implied warranty, the Court should apply a four year statute of limitations under Texas written contract law. *Id*. [ECF No. 190]. Alternatively, the Court could look to similar durations used by other courts or should at least imply the warranty lasted only twenty years—"the initial rental period" as in *Poorvu*. *Id*. at 9 [ECF No. 190]; *Poorvu*, 190 Ct.Cl. at 647. The USPS also alleges even if a valid warranty does exist the building plans and specifications were not defective. Def.'s Br. 11-12 [ECF No. 190].

**A. Duration**

---

[3] *See also Wm. T. Thompson Co. v. U.S.*, 26 Cl. Ct. 17, 25 (1992), *aff'd sub nom. Hercules Inc.*, 24 F.3d 188, *aff'd*, 516 U.S. 417 (1996) ("[T]here must be more than the mere existence of a warranty to entitle the plaintiff to recover against the Government. Plaintiff must also show that this warranty was *breached* by the Government and that this breach caused plaintiff to suffer the type of damages recoverable in contract.") (emphasis in original).

The Court does not find that the warranty expired. The Court also declines to apply Texas written contract law to the duration of the implied warranty. Federal common law governs this case. *Forman v. U.S.*, 767 F.2d 875, 879 (Fed. Cir. 1985). Absent any binding federal precedent that directly addresses a legal issue in the case, the court should "take account of the best in modern decision and discussion." *Padbloc Co. v. U.S.*, 161 Ct. Cl. 369, 377 (1963). "[T]he warranty of specification is not limited to the time of performance, according to the holding in *Poorvu* []." *Wm. T. Thompson Co.*, 26 Cl. Ct. at 25.[4]

### B. Existence and Scope

The lease between the Spodeks and the USPS provided for a 20-year base term, beginning on July 1, 1970, and ending on June 30, 1990, with an annual rent of $74,025 for each of the 20 years. Am. Mem. Op. & Order 2 ¶ 2 [ECF No. 162]. The lease allowed the USPS to exercise six five-year options. *Id*. at 2 ¶ 3 [ECF No. 162]. The USPS exercised the first four of the six five-year options, thus continuing their tenancy of the building through June 30, 2010. *Id*. at 2 ¶ 4 [ECF No. 162]. On June 21, 2007, the contracting officer for the USPS, Ms. Rybicki, terminated the lease effective on June 30, 2007. *Id*. at 8 ¶ 35 [ECF No. 162]. Plaintiffs sold the property on July 11, 2008. *Id*. at 9 ¶ 41 [ECF No. 162].

At trial this Court found that Plaintiffs did not meet their lease obligations after the USPS notified Plaintiffs that the asbestos in the building was a safety concern for its employees and

---

[4] *See also Poorvu*, 190 Ct.Cl. at 651 ("Nor does the fact that in this case the proof of the deficiency in the plans did not manifest itself until after the building was standing for a number of years—unlike the Spearin-Laburnum-Luria situation where it becomes known during construction—remove it from the purview of the principles enunciated above. It would make little sense to impose the obligation of an implied warranty and then limit the life of the warranty to the period of construction."); *Hercules Inc.*, 24 F.3d at 197 ("the implied warranty of specifications covers problems arising after performance of the underlying contract.") (citing *Poorvu*, 190 Ct.Cl. at 640); *see also* Gov't Cont. Under Fed. Acquisition Reg. § 36.32 (3d Ed.) ("The *Poorvu* decision allowed for the implied warranty to extend to successors in interest to the land and assignees of lessor under a lease, after several years had elapsed on the leaseback.").

4

customers. Am. Mem. Op. & Order 17 [ECF No. 162]. "The USPS met its burden of proving by a preponderance of the evidence that it was constructively evicted by Plaintiffs' failure to perform their duties under the lease and that the default termination was justified under the circumstances." *Id*. at 18 [ECF No. 162]. This Court found there was no breach on behalf of the USPS. "The credible evidence demonstrates that the contracting officer . . . had no choice but to terminate the lease because of Plaintiffs' failure to perform the duties required by the lease and their lack of assurances of adequate future performance." *Id*. [ECF No. 162] (citing Tr. Vol. 2 at 169-171).[5] Plaintiffs failed to adhere to their duty under the lease to maintain the building in tenantable condition. *Id*. at 20 [ECF No. 162]. The Court did not find that the USPS contributed to the release of the asbestos.

The Court however failed to consider the presence of an implied warranty under *Poorvu*. The Court finds there is an implied warranty by the USPS that the building would be fit for its intended purpose. Similar to *Poorvu*, the USPS cannot "avoid a lease on a building which was built for it, in accordance with plans supplied by it, on the ground that the building was not sufficient for its needs. . . . [T]he government must answer for damage incurred because of inadequate plans it has furnished." *Poorvu*, 190 Ct.Cl. at 651; *see also Spodek*, 551 Fed. App'x at 788 (quoting *Poorvu*, 190 Ct. Cl. at 651). In *Poorvu*, the court held the implied warranty that the plans and specifications were sufficient did not weigh against the covenant to repair and there was no duty to repair upon the lessor.[6] However, this is distinguishable from the case at bar

---

[5] *See also id*. at 19 [ECF No. 162] ("The record contains no indication that Plaintiffs intended to do anything but string the USPS along by promises of a remediation plan. Plaintiffs never showed even a hint of willingness to remediate the asbestos. . . . Plaintiffs' failure to perform their duties constituted a constructive eviction and a default under the lease that was not attributable to the USPS.").

[6] *See Poorvu*, 190 Ct.Cl. at 653 ("Moreover, it may be further argued that paragraph 7 imposes no duty to repair upon the lessor in this case because of the proviso that *he is not responsible* for repairs 'arising from the act or the negligence of the Government's agents or employees.' Since the decision to delete the

because Plaintiffs did not provide sufficient evidence that it was the plans and specifications, versus Plaintiffs' failure to repair, that caused the building to become un-tenantable. *See Hercules Inc.*, 24 F.3d at 198 ("Hercules and Thompson must show *not only* that the facts support an implied warranty, but also that the warranty was breached and that their damages were caused by the breach.") (emphasis added and citation omitted).[7]

Plaintiffs argue that the USPS cannot prove the release of ACM was due to a breach of maintenance responsibility since the USPS's own expert, Mr. Bramlett, found that the cause of the fiber release was "unknown." Pls.' Br. 5 [ECF No. 189]. However, the Fifth Circuit rejected this argument in finding that the ACM came from the building itself. *Spodek*, 551 Fed. App'x at 785-86. While this means the damage caused by the presence of the ACM was at least in part due to the building plans and specifications created by the USPS, this does not mean that the USPS is strictly liable for all damages as Plaintiffs contend. "The default resulted from Plaintiffs' failure to fulfill their duty to remove the hazardous conditions from the leased property and not from anything the USPS did, or failed to do." Am. Mem. Op. & Order 21 [ECF No. 162]. In other words, the damage was caused not only by the presence of the building materials, but by Plaintiffs' refusal to conduct maintenance and repairs on the facility despite numerous requests. *See* Pretrial Order 13 ¶ 2.10, 15 ¶ 2.18, 18 ¶ 2.33, 19 ¶¶ 2.34-2.35. Plaintiffs knew about the asbestos and instead chose to let the dust continue to accumulate. *Id.* at 18 [ECF No. 162]. The evidence did not prove Plaintiffs' claims that the release of asbestos resulted from the acts or negligence of the USPS's agents or employees; "[i]n fact, there is no credible evidence of USPS fault." *Id.* at 20 [ECF No. 162]. Plaintiffs' breach of their maintenance

---

pilings under the parking and maneuvering area *is directly traceable* to the POD, it may be concluded that this proviso negates any duty on the lessor to repair in this instance.") (emphasis added).

[7] *See also Spodek*, 551 Fed. App'x at 785 ("Paragraph 7 of the lease places the burden *on the lessor* to demonstrate that the damages arose from 'the act or negligence of the Government's agents or employees.'") (emphasis added).

responsibility under Paragraph 7 of the lease along with their failure to remediate contributed to the release of asbestos.

The USPS is responsible for the presence of the ACM in the building. However, unlike in *Poorvu*, the Court is unable to hold that the release of asbestos was "directly traceable" to the USPS. *Poorvu*, 190 Ct.Cl. at 653; *see supra* note 6. Nevertheless, under *Poorvu* the government's liability is not "cut off." *Spodek*, 551 Fed. App'x at 788. The Court will reflect the existence of the USPS's implied warranty by apportioning the damages in accordance with the liability of each party. *See Spodek*, 551 Fed. App'x at 789.

### III. Damages

Plaintiffs request the Court to award damages between $2,547,287 and $4,307,262. Pls.' Br. 1 [ECF No. 189].[8] This Court previously awarded Plaintiffs, as an offset to the USPS's damages, $75,038.69 for unpaid rent, taxes, and property damages. Am. J. 1 [ECF No. 163]. The Court ordered the USPS shall recover $173,960.31, plus post-judgment interest. *Id*. [ECF No. 163].

First, the parties do not contest maintaining the Court's award to Plaintiffs of $47,613.69 for unpaid rent and taxes along with $27,425 for property damages. Therefore, the Court maintains this award. However, Plaintiffs argue for an additional $91,940.31 in unpaid rent and

---

[8] Plaintiffs base these damages on the following categories:
1. $47,613.69: Unpaid rent and taxes through termination of the lease.
2. $27,425: Non-asbestos repairs or restoration.
3. $91,940.31: Unpaid rent and taxes from termination through the date of the property's sale.
4. $157,167: Unpaid rent for from the building sale through the end of the lease term.
5. $860,000: Value of rent for unexercised fifth and sixth option periods.
6. $70,391: Asbestos related abatement/repair costs.
7. $967,750-$2,727,725: Diminished value of the property due to asbestos and the USPS's breach.
8. $325,000: Interest for all damages under the Contracts Dispute Act.

*Id*. at 1, 12 [ECF No. 189].

taxes from the date of termination of the lease through the sale of the building. Pls.' Br. 7 [ECF No. 189]. Plaintiffs argue that the USPS's implied warranty does not justify its termination of the lease. *Id*. [ECF No. 189]. The USPS responds that if the Court overturns the termination of the lease the actual amount in unpaid rent would be $84,505.56 and Plaintiffs are only entitled to unpaid taxes that they actually paid. Def.'s Br. 13-14 [ECF No. 190].

Plaintiffs also request the Court to award them $157,167 for the unpaid rent from the date of the sale of the property to the end of the lease term. Pls.' Br. 9 [ECF No. 189]. Plaintiffs argue under *Sun Cal, Inc. v. U.S.*, 25 Cl.Ct. 426 (1992) that the $550,000 sale of the property did not fully mitigate Plaintiffs' loss of rent. *Id.* [ECF No. 189]. Plaintiffs contend the sale does not fully mitigate their damages because the value of the property is an amount between $1,417,750 and $3,277,725. *Id.* [ECF No. 189]. Plaintiffs allege that if the USPS had fulfilled their contract obligations, Plaintiffs would be entitled to rent, in addition to the value of the property. *Id.* [ECF No. 189]. Plaintiffs allege they could have received all of the rent from the USPS through June 2010 and then could have sold the property. *Id.* at 10 [ECF No. 189].

The USPS argues that Plaintiffs waived these damages on appeal since they did not stipulate to future damages at trial. Def.'s Br. 14 [ECF No. 190]. The USPS also argues that they do not owe any post-sale rent because the sale of the property fully mitigated Plaintiffs' damages. *Id.* [ECF No. 190]. The USPS relies on two state cases for this position: *Kranse v. Tedeschi & Grasso*, 762 N.E.2d 841 (2002) and *McGuire v. Jersey City*, 593 A.2d 309 (1991). The USPS contends that in both cases the courts found the lessor's sale of the building constitutes mitigation precluding recovery of post-sale rent. *Id*. [ECF No. 190]. Plaintiffs reply that they do have a duty to mitigate, but the approaches taken in *McGuire* and *Kranse* do not comport with traditional notions of contract law. Pls.' Reply 6 [ECF No. 191]. Plaintiffs state

that the sales price of $550,000 was less than the property's value and even if the Court accepts the USPS's valuation Plaintiffs are still left with $40,000 in unmitigated damages for unpaid rent through the end of the lease term. *Id.* at 7 [ECF No. 191].

In Texas, "[a] landlord has a duty to mitigate damages if a tenant abandons the leased premises in violation of the lease." TEX. PROP. CODE § 91.006.[9] The landlord must mitigate through "objectively reasonable efforts to fill the premises." *Alexander v. Holden Bus. Forms, Inc.*, No. 4:08-CV-614-Y, 2009 WL 3818149, at *5 (N.D.Tex. Nov. 16, 2009) (quoting *Austin Hill Country Realty*, 948 S.W.2d at 299).[10] In *Sun Cal, Inc.* the court held,

> [W]here anticipatory breach and mitigation apply, there is no sound basis on which to imply that these post-breach actions by the lessor necessarily amount to an agreement to accept a surrender or an acknowledgement by the lessor that it no longer can seek full damages for the breach. To the contrary, these post-breach actions typically will constitute merely an attempt to mitigate damages, and that attempt is totally consistent with an intent to seek full damages.

*Sun Cal, Inc.*, 25 Cl. Ct. at 434. The USPS misconstrues the holding of *Sun Cal* to imply a lessor could *only* recover future rent *after* a sale subject to mitigation. *See* Def.'s Br. 16 [ECF No. 190]. Plaintiffs were unable to fill the property with new tenants because of the presence of asbestos and did not fully mitigate their damages through the sale of the building.

At trial Plaintiffs argued "[a] landlord may recover future rents when the tenant breaches the lease"[11] and continue to rely on this argument based on their interpretation of *Sun Cal, Inc.* However, Plaintiffs cite to no authority to support the contention that a lessor is entitled to future

---

[9] *See also Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997) ("A landlord should not be allowed to collect rent from an abandoning tenant when the landlord can, by reasonable efforts, relet the premises and avoid incurring some damages. We therefore recognize that a landlord has a duty to make reasonable efforts to mitigate damages when the tenant breaches the lease and abandons the property, unless the commercial landlord and tenant contract otherwise.").

[10] *See also Spodek I,* 73 Fed.Cl. at 10 ("When federal law does not answer the issue presented, however, a court may look to general landlord/tenant, property and contract law principles as they are embodied in state law pronouncements for guidance.") (citing *Brooklyn Waterfront Terminal Corp. v. United States*, 117 Ct.Cl. 62, 84 (1950); *Ginsberg v. Austin*, 968 F.2d 1198, 1200 (Fed. Cir. 1992)).

[11] *See* Pls.' Post-Trial Br. 17 [ECF No. 151].

9

rent *after* the sale of the property. Plaintiffs ignore that *Sun Cal* holds lessors need to "take reasonable steps to mitigate damages resulting from the repudiation of a lease contract." *Sun Cal, Inc.*, 25 Cl. Ct. at 434. This is analogous to a landlord's duty to mitigate under Texas law. Plaintiffs selling the property did not amount to a surrender in rent, it only partially mitigated their damages. The presence of the implied warranty facilitates the award of limited damages for Plaintiffs. Plaintiffs have shown on remand: (1) a valid warranty existed, (2) the USPS breached the warranty, and (3) the breach caused Plaintiffs damages. The $84,505.56[12] in unpaid rent are the only damages the Court finds that Plaintiffs have proven that the USPS caused by the early termination of the lease. Plaintiffs have not provided any evidence that they actually paid taxes during this period.

"In awarding compensatory damages, the effort is made to put the injured party in as good a position as that in which he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with harms that he had no sufficient reason to foresee when he made the contract." *Sacramento Mun. Utility Dist. v. United States*, 70 Fed.Cl. 332, 368 n.35 (2006) (quoting Restatement (First) of Contracts § 329 (1932) and *Northern Helex Co. v. United States*, 207 Ct.Cl. 862, 875 (1975)). "Although damages are recoverable for breach of contract, the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach." *Spodek I*, 73 Fed.Cl. at 24 (citing *Bluebonnet Sav. Bank, F.S.B. v. United States*, 339 F.3d 1341, 1345 (Fed. Cir. 2003)). "[C]ourts should avoid bestowing an 'unfair windfall' on the [non-breaching party] by compensating him or her above and beyond the losses suffered under the breached agreement." *Id.* (citing *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1315 (Fed. Cir. 2004)). The Court finds that since the USPS did breach its implied warranty, Plaintiffs should recover the

---

[12] *See* Def.'s Br. 14 n.4 [ECF No. 190].

amount of unpaid rent from June 30, 2007, to July 2008. *Cf. id.* at 33 ("For this reason, and because the plaintiffs materially breached the lease by failing to maintain the property in tenantable condition, the plaintiffs are not entitled to recover lost rent during the period the building was condemned or for the remainder of the third or fourth executed option periods."). The Court apportions these damages based on the liabilities of each party.[13] The damages in this case are similar to the parties in *Spodek I*, however, that case did not deal with the presence of an implied warranty under *Poorvu*. *See Spodek I*, 73 Fed.Cl. at 18-19. Further, unlike in *Spodek I*, the USPS here successfully relied upon the affirmative defense of constructive eviction and Plaintiffs failed to prove by a preponderance of evidence that the USPS breached the lease. Plaintiffs constructively evicted the USPS and defaulted on the lease. Yet because the USPS breached its implied warranty the circumstances entitle Plaintiffs to recover some, but not all, of its damages in unpaid rent. Plaintiffs' continued failure to remediate, despite repeated opportunities, cannot relieve them of all liability to the USPS. *See Spodek I*, 73 Fed.Cl. at 19 ("Damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation." (citing Restatement (Second) of Contracts § 350(1) (1981)); *see also Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002) ("a party cannot recover damages for loss that he could have avoided by reasonable efforts.").

   The Court declines to award Plaintiffs the $157,167 in unpaid rent from the building sale through the end of the lease term. Plaintiffs did not plead for rent after the sale of the property. *See* Third Am. Compl. 3 [ECF No. 110] ("The USPS is therefore liable for all past rents for the use of the premises up to and including the date of the sale of the premises.").

---

[13] *Spodek I*, 73 Fed.Cl. at 26 ("It is well established that where Government-responsible and contractor-responsible causes operate jointly to create defects, damage or injury, the costs of compensation, repair or correction will be shared by the parties. Where possible the shares will be prorated according to the degree of responsibility for the end result that each side bears.") (citations omitted).

The Court will not award Plaintiffs $860,000 for the value of the fifth and sixth year option periods under the lease. Pls.' Br. 10 [ECF No. 189]. Plaintiffs argue "[t]he USPS unreasonably breached the lease during the fourth option period and it cannot be disputed that the USPS would have exercised the remaining two five-year options for a value of $860,000 to Plaintiffs." *Id.* [ECF No. 189]. Plaintiffs again contend that the breach was not justified under *Poorvu*. *Id.* [ECF No. 189]. The USPS argues that Plaintiffs waived this amount by not asserting it at trial and the USPS did not exercise these two options which the lease allows. Def.'s Br. 16 [ECF No. 190]. The Court agrees with the USPS that its choice not to exercise these options waives any claim for the two final rental periods. *See id.* at 16-17 [ECF No. 190]; *see also Spodek I*, 73 Fed.Cl. at 33 ("The plaintiffs are not entitled to receive rent for the option years that the government did not exercise, i.e., option periods 5 and 6.").

The Court shall not award Plaintiffs the $70,391 in alleged asbestos-related abatement costs. Plaintiffs argue that since the USPS is liable for any damages from the use of asbestos in the property this includes asbestos-related damages. Pls.' Br. 7 [ECF No. 189]. The USPS contends that Plaintiffs never incurred these costs. Def.'s Br. 17-18 [ECF No. 190]. Again, Plaintiffs did not prove their alleged damages of $188,020, including the $70,391 in abatement costs, at trial. Am. Mem. Op. & Order 23-24 [ECF No. 162]. The Court accepted Mr. Bradford's testimony as the most credible witness on this area and agreed with his assessment of Mr. Gary Cooper's report, *see* Plaintiffs' exhibit 88, in finding the damages amounted to only $27,425. *Id.* at 23 [ECF No. 162]. This included abatement of the asbestos. Further, Plaintiffs admit that they did not actually incur these costs. Pls.' Reply 8 [ECF No. 191]; Def.'s Surreply 7 [ECF No. 192].

The presence of asbestos does not warrant awarding Plaintiffs the alleged diminished value of the property. Plaintiffs argue that the Fifth Circuit's opinion *mandates* the Court award

Plaintiffs the diminished value of the property because the USPS is liable for *all damages* stemming from the use of asbestos in the construction of the building. Pls.' Br. 10 [ECF No. 189] (emphasis added). However, this Court held that Plaintiffs failed to provide evidence showing the building was diminished by anything the USPS did, or failed to do. Am. Mem. Op. & Order 23 [ECF No. 162]. "[T]he record contains no competent evidence that the USPS diminished the fair market value of the building by releasing information about the building's condition, *or by any other means*." *Id*. [ECF No. 162] (emphasis added). Plaintiffs have not introduced new evidence or cite to authority that supports an implied warranty by the USPS "mandates" an award of diminished value. *See Spodek*, 551 Fed. App'x at 789 ("Importantly, the existence of an implied warranty does not necessarily mean that the government is strictly liable for all of the consequences of the asbestos in the building.").

The Court will also reduce the amount it awarded for the USPS's counterclaim for temporary relocation costs through December 2007. *See* Am. Mem. Op. & Order 27 [ECF No. 162]. The Court still finds that the USPS "did not fail to mitigate its damages . . . ." *Id*. at 24-25 [ECF No. 162]. The Court held that the USPS only proved it suffered damages in the amount of $248,999 for the costs of the hub operation's temporary quarters. *Id*. at 27 [ECF No. 162]. The implied warranty by the USPS facilitates that the Court reduce these damages. Since the property was built according to the plans and specifications of the USPS this contributed to the USPS having to relocate. Accordingly, the Court will apportion the liability of the costs of relocating based upon the implied warranty.[14] The Court finds that the implied warranty entitles the USPS to recoup only 80% of these costs which equates to $199,199.20. The Court will subtract the

---

[14] *See Spodek I*, 73 Fed.Cl. at 34 ("However, because the defendant contributed to the building's deterioration and ultimate condemnation, the defendant may recoup only 80 percent of its initial costs, or $75,200.00.").

13

$159,544.25 previously awarded to Plaintiffs for unpaid rent (as a setoff to the USPS's total judgment), for a total remaining amount of $39,654.95.[15]

Since the Court declines to award Plaintiffs any damages, it will not award Plaintiffs post-judgment interest under the Contracts Disputes Act. *See* 41 U.S.C. § 7109.

## **CONCLUSION**

The USPS shall recover from Plaintiffs in the amount of $39,654.95, plus post-judgment interest at the rate of 0.83% per annum. Each party shall bear its own costs.

**SO ORDERED,** this 28th day of February, 2017.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[15] $248,999 x 80% = $199,199.20 — $159,544.25 ($75,038.69 + $84,505.56) = $39,654.95.